**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LISA ELLEN STEVENS,**

                    **Plaintiff,**           **5:12-cv-1366**
                                         **(GLS)**

        **v.**

**CAROLYN W. COLVIN**,
Acting Commissioner of Social
Security,

                    **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|

**FOR THE PLAINTIFF:**
Stanley Law Offices                JAYA A. SHURTLIFF, ESQ.
215 Burnet Avenue
Syracuse, NY 13203

Law Offices of Kenneth Hiller, PLLC    KENNETH R. HILLER, ESQ.
6000 North Bailey Avenue - Suite 1A
Amherst, NY 14226

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN     BENIL ABRAHAM
United States Attorney             Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Plaintiff Lisa Ellen Stevens challenges the Commissioner of Social

Security's denial of Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g)

and 1383(c)(3).  (Compl., Dkt. No. 1.)  After reviewing the administrative

record and carefully considering Stevens' arguments, the court affirms the

Commissioner's decision and dismisses the complaint.

### II.  Background

On April 27, 2010 and April 28, 2010, Stevens filed applications for

DIB and SSI, respectively, under the Social Security Act ("the Act"),

alleging disability since November 14, 2008.  (Tr.[1] at 85-86, 249-55, 256-

59.)[2]  After her applications were denied, (*id.* at 98-104), Stevens

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (Dkt. No. 8.)

[2] Stevens' application for DIB reflects an alleged onset date of September 14, 2008. (Tr. at 249.)  The discrepancy between the alleged onset dates, which apparently went unnoticed by the Administrative Law Judge, (Tr. at 38), is of no moment.

requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 109), which was held on August 25, 2011, (*id.* at 36-84). On September 12, 2011, the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review. (*Id.* at 1-4, 19-35.)

Stevens commenced the present action by filing her complaint on September 6, 2012, wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 8.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 10, 11.)

### III. <u>Contentions</u>

Stevens contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 10 at 11-25.) Specifically, Stevens claims that: (1) the ALJ committed factual and legal errors at step three by failing to find that Stevens met listing 12.04; (2) the ALJ's determination of Stevens' mental residual functional capacity (RFC) was unsupported by substantial evidence because she gave no weight to Stevens' treating physician and little weight to the

examining physician; (3) the ALJ failed to develop the record in regard to Stevens' exertional RFC; (4) the ALJ did not apply the appropriate legal standards in assessing Stevens' credibility; and (5) the ALJ erroneously relied on the testimony of a vocational expert (VE) in making her step five determination.  (*Id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence.  (Dkt. No. 11 at 2-17.)

## IV.  Facts

The court adopts the parties' undisputed factual recitations.  (Dkt. No. 10 at 3-11; Dkt. No. 11 at 1.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y.

_____

[3] Review under 42 U.S.C. §§ 405(g) and 1383(c)(3) is identical.  As such, parallel citations to the regulations governing SSI are omitted.

Mar. 19, 2008).

## VI. <u>Discussion</u>

### A.   <u>Listing 12.04</u>

First, Stevens contends that the ALJ committed factual and legal errors at step three. (Dkt. No. 10 at 13-15.) Specifically, Stevens claims that her affective disorder meets the criteria of listing 12.04(B) and listing 12.04(C). (*Id.*) In opposition, the Commissioner argues that the ALJ's findings with respect to the paragraph B criteria are supported by substantial evidence,[4] and, with respect to listing 12.04(C), the two-year durational requirement was not met and the medical evidence of record did not establish the presence of the paragraph C criteria. (Dkt. No. 11 at 6-8.) The court agrees with the Commissioner.

As an initial matter, affective disorders, which are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome," constitute a listing level impairment, and presumptive disability, provided that the claimant meets the requirements set forth in paragraphs A and B, or the claimant satisfies the requirements

---

[4] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

set forth in paragraph C.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.

Here, the parties do not dispute whether the paragraph A criteria were met,

and instead address only whether the paragraph B and C criteria were met.

Thus, the court separately considers the paragraph B and C requirements

below.

### 1.   *Paragraph B Criteria*

Paragraph B requires that a plaintiff's mental impairment result in at

least two of the following: "(1) [m]arked restriction of activities of daily

living; or (2) [m]arked difficulties in maintaining social functioning; or (3)

[m]arked difficulties in maintaining concentration, persistence, or pace; or

(4) [r]epeated episodes of decompensation, each of extended duration."

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(B).

Here, ultimately concluding that the paragraph B criteria were not

met, the ALJ found that Stevens suffered from mild limitations in activities

of daily living, moderate restrictions in social functioning, moderate

difficulties with regard to concentration, persistence or pace, and no

episodes of decompensation.  (Tr. at 25-26.)  In so deciding, the ALJ relied

on hearing testimony, the opinion of state agency psychological consultant,

Dr. T. Inman-Dundon—who found that Stevens had not met the criteria of

any listing—findings from state psychological consultant Dr. Jeanne A. Shapiro's psychiatric examination, and an activities of daily living report, completed by Stevens. (*Id.* at 25, 36-84, 300-12, 382-86, 391-406.)

First, with respect to activities of daily living, the record establishes that Stevens was able to care for her personal and household needs, prepare holiday meals, iron, drive, occasionally travel to see her father, take an online course, grocery shop, and care for her two dogs. (*Id.* at 43-44, 63-64, 65-67, 303-06, 382, 385.) Thus, substantial evidence supports the ALJ's decision that Stevens suffered from only a mild impairment in activities of daily living.

Second, with respect to social functioning, the record fails to establish that Stevens suffered from marked restrictions. Instead, the record indicates that Stevens has moderate social functioning. Stevens lives with her boyfriend, spoke on the phone with her son when he was serving in the military and lived with her son for some time when he was released from the military, regularly traveled to doctor's appointments, occasionally traveled to visit her father, and stated that she had no problem getting along with people in authority or with her family and friends. (*Id.* at 42-43, 66, 302, 307-08, 385.) Given this evidence, while Stevens certainly

has some social limitations, the ALJ's decision that she suffered from not more than moderate restrictions in social functioning is supported by substantial evidence.

Third, with regard to concentration, persistence, and pace, Stevens is able to count change, handle a savings account, and generally manage household finances.  (*Id.* at 306.)  Dr. Shapiro also noted that Stevens enrolled in an online course, had adequate recent and remote memory skills, and was able to maintain attention and concentration and perform serial threes.  (*Id.* at 382, 384.)  Again, while Stevens certainly has some limitations, the ALJ's decision that Stevens suffered from moderate restrictions in concentration, persistence, and pace is supported by substantial evidence.

Finally, there is no evidence that Stevens suffered any episodes of decompensation.  Stevens' related argument that the ALJ failed to properly weigh the opinion of her treating physician, Dr. V. Patil, (Dkt. No. 10 at 14-15; Tr. at 497), will be addressed below, *see infra* Part VI.B.1.  Thus, the ALJ correctly determined that paragraph B criteria were not met.

### 2.    *Paragraph C Criteria*

 The paragraph C criteria are met, provided that the claimant has a:

Medically documented history of a chronic affective disorder of at least [two] years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or

> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(C); *see* 20 C.F.R. § 404.1520(d).

Stevens contends that she meets the paragraph C criteria based solely on Dr. Patil's opinion that she has "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." (Dkt. No. 10 at 13; Tr. at 394.) Although the court addresses below the ALJ's apportionment of weight among the medical sources, *see infra* Part VI.B.1, the court notes that Dr. Patil's opinion, by itself, does not establish that Stevens meets the paragraph C criteria because it does not indicate the prerequisite requirement that she had a "[m]edically documented history of a chronic

affective disorder of at least [two] years' duration" or contain any explanation for his determination. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(C). Furthermore, Dr. Inman-Dundon found that the medical evidence of record did not establish that Stevens met the paragraph C criteria. (Tr. at 402.)

Accordingly, the ALJ's determination that Stevens does not meet listing 12.04 is supported by substantial evidence.

## B.  RFC Determination

The ALJ found Stevens to retain the RFC[5] to perform light work, except that:

> she is limited to occasional climbing of ramps and stairs; can never climb ladders, ropes, or scaffolds; is limited to occasional kneeling, crawling, stooping, crouching and balancing; is limited to simple, routine, repetitive tasks; reminders to perform tasks are not necessary; is unable to perform at a production rate pace; needs to be in a low-stress as defined as occasional changes to work setting and occasional decision-making; is limited to making simple decisions occasionally; should have no more than occasional interaction with coworkers, supervisors, and the public; requires a sit-stand option as needed; and is limited to occasional exposure to extremes in temperature, humidity,

---

[5] A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* at § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g).

and wetness.

(Tr. at 26.)  Stevens takes issue with the ALJ's determination of both her mental and physical RFC.  (Dkt. No. 10 at 15-21.)  Each will be addressed in turn below.

    1.    *Mental RFC*

Stevens contends that the ALJ improperly afforded great weight to the opinion of non-examining state psychological consultant Dr. Inman-Dundon, and gave no weight to the opinion of treating physician Dr. Patil and only little weight to the state agency consultative psychologist Dr. Shapiro.  (*Id.* at 15-19*.*)  Stevens claims that the ALJ's misappropriation of weight to the medical sources resulted in a flawed RFC determination.  (*Id.* at 15-19.)  The Commissioner counters that the ALJ properly discounted Dr. Patil's RFC assessment because it was inconsistent with other substantial evidence in the record.  (Dkt. No. 11 at 12-14.)  The court agrees with the Commissioner.

Generally, an ALJ is required to give controlling weight to a treating physician's medical opinion if it is supported by acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R. § 404.1527(c)(2); *Halloran v. Barnhart*, 362 F.3d

28, 32 (2d Cir. 2004).  The ALJ is required to explain the weight she gives

to the opinions of a treating physician.  *See* 20 C.F.R. § 404.1527(c)(2).

When an ALJ does not give a treating physician's opinion controlling

weight, she must assess several factors to determine how much weight to

give the opinion, including: (1) the length, nature, and extent of the

treatment relationship; (2) the frequency of examination by the treating

physician for the conditions in question; (3) the medical evidence and

explanations provided in support of the opinion; (4) the consistency of the

opinion with the record as a whole; (5) the qualifications of the treating

physician; and (6) other relevant factors tending to support or contradict

the opinion.  *See id.* § 404.1527(c)(2)-(6).  The opinion of a non-examining

source can override the opinion of an examining source if it is supported by

evidence in the record.  *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir.

1995); *see also Netter v. Astrue*, 272 F. App'x 54, 55-56 (2d Cir. 2008);

*Beasock v. Colvin*, No. 6:12-cv-1355, 2014 WL 421324, at *9 (N.D.N.Y.

Feb. 4, 2014); *Everson v. Comm'r of Soc. Sec.*, No. 6:11-cv-901, 2012 WL

3061944, at *2 (N.D.N.Y. July 26, 2012).

Although the ALJ could have discussed the factors listed in 20 C.F.R.

§ 404.1527(c)(2)-(6) in more detail, this shortcoming does not amount to

error because her ultimate determination is supported by substantial evidence. Not only was Dr. Patil's report completed over a year after he last examined Stevens, (Tr. at 492-97), but, more importantly, it departed from the thrust of other substantial evidence in the record.[6] (*Id.* at 29.) In his mental impairment questionnaire, Dr. Patil opined that Stevens had marked limitation in: (1) remembering work-like procedures; (2) understanding, remembering, and carrying out very short and simple instructions; (3) maintaining attention for two-hour segments; (4) making simple work-related decisions; (5) completing a normal workday and workweek without interruptions; (6) accepting instructions and responding appropriately to criticism from supervisors; (7) getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; (8) responding appropriately to changes in a routine work setting; and (9) dealing with normal work stress. (Tr. at 495-96.) Dr. Patil further opined

---

[6] Additionally, Dr. Shapiro's conclusions are internally inconsistent with her own evaluation findings. Dr. Shapiro's medical source statement concluded that Stevens may have difficulty adequately understanding and following some instructions and directions, completing tasks, interacting appropriately with others, attending work or maintaining a schedule. (Tr. at 385.) During the exam, however, Dr. Shapiro noted that Stevens stated that her symptoms had improved, she recently enrolled to take an online course, and she denied any past psychiatric hospitalizations. (*Id.* at 382-83.) Also during the exam, Dr. Shapiro noted that Stevens was cooperative, exhibited adequate relating and social skills, and demonstrated coherent and goal-directed thought processes. (*Id.* at 384.) Given these internal inconsistencies, the ALJ properly afforded Dr. Shapiro little weight.

that Stevens' global assessment of functioning (GAF)[7] score was currently in the fifty-five to sixty range, but that her maximum GAF in the last year was sixty-five.[8]  (*Id.* at 492.)

The ALJ, however, found Dr. Patil's functional restrictions to be both unsupported by the treatment records and internally inconsistent.  (*Id.* at 29.)  The court agrees that the functional restrictions are unsupported by the treatment records, and in particular, the treatment records from Oswego Hospital, Behavior Services Division.  Stevens first visited Oswego Hospital, Behavior Services Division on April 15, 2010, and presented with problems of anxiety, panic attacks, and poor sleep.  (*Id.* at 425.)  Progress notes dated approximately one month later, on May 10, 2010, demonstrate that Stevens was responding well to, and her symptoms were controlled by, the medication.  (*Id.* at 424.)  Stevens was seen nearly once per month over the next year by Oswego Hospital, Behavior Services Division.  (*Id.* at 422-24, 473-86.)  At these

---

[7] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004).

[8] A GAF score of fifty-one to sixty indicates moderate symptoms, while a GAF score of sixty-one to seventy indicates the existence of some mild symptoms, or some difficulty in social, occupational, or school functioning, but also that the individual is able to function fairly well and has some meaningful interpersonal relationships.  *See* Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000).

appointments, she reported that her symptoms were stable or improving, and that her appetite, concentration, and focus were good, despite occasional difficulty sleeping. (*Id.*)  She also consistently reported that the medication was helping, that there were no side effects to her medications, and that she hoped she would continue to get better. (*Id.*)  Up until her last documented appointment on April 13, 2011, (*id.* at 473)—nearly one year after her first appointment, (*id.* at 425)—Stevens' concentration and focus were good, and her thought processes and speech were normal, despite some mild depression and anxiety, (*id.* at 422-24, 473-86).

Dr. Patil's medical source statement is also inconsistent with treatment records from Upstate Comprehensive Pain Clinic.  Indeed, on July 30, 2010, during a mental status exam, Stevens exhibited no depression, anxiety, or agitation, her insight and memory were intact, and she was oriented to time, place, and person. (*Id.* at 454-55.)  Stevens also underwent mental status examinations on August 18, 2010, September 3, 2010, September 24, 2010, October 22, 2010, May 13, 2011, and June 14, 2011, and the findings remained unchanged. (*Id.* at 457-58, 461, 464, 467-68, 499, 502-04.)

Ultimately, Dr. Patil's restrictive medical source statement is belied

by, and inconsistent with, Stevens' treatment records from Oswego Hospital, Behavior Services Division and Upstate Comprehensive Pain Clinic. Dr. Inman-Dundon, however, determined that Stevens has mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no repeated episodes of decompensation. (Tr. at 391-406.) As the ALJ concluded, Dr. Inman-Dundon's opinion is more consistent with the record medical evidence discussed above. Accordingly, notwithstanding Stevens' claims to the contrary,[9] it follows that the ALJ's assignment of weight and assessment of Stevens' mental RFC are supported by substantial evidence, and, thus, affirmed.

### 2. *Physical RFC*

Stevens also argues that the ALJ erred in determining her physical RFC by failing to make a function-by-function finding, rely on medical opinion evidence to formulate the opinion, and develop the record. (Dkt.

---

[9] Stevens also offers an alternative argument that, if the ALJ found a conflict, ambiguity, gap in the record, or another inconsistency with Dr. Patil's medical source statement, she was under a duty to recontact Dr. Patil to clarify her concerns. (Dkt. No. 10 at 18-19.) This argument is unavailing. The ALJ was required to recontact Dr. Patil "only if the records received were 'inadequate . . . to determine whether [Stevens was] disabled,'" which was not the case here. *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 634 (2d Cir. 2012) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996)); *see Carvey v. Astrue*, 380 F. App'x 50, 53 (2d Cir. 2010).

No. 10 at 19-21.)  The Commissioner counters, and the court agrees, that the ALJ fulfilled her obligation to develop the record, was not required to make a function-by-function finding, and considered all of the medical evidence in formulating her RFC, which is supported by substantial evidence.  (Dkt. No. 11 at 9-11.)

First, Stevens' contention that the ALJ did not rely on medical opinion evidence is misguided.  Stevens argues that, because the ALJ afforded Dr. Kalyani Ganesh's opinion "little weight," the ALJ "formulate[d] her own opinion as to what the clinical findings and objective medical dat[a] revealed as to Stevens' ability to engage in light work on a regular and continuing basis."  (Dkt. No. 10 at 21.)  In fact, however, after reviewing Dr. Ganesh's opinion, the ALJ concluded that it was entitled to little weight because "the evidence of record shows *greater* functional limitations" than Dr. Ganesh's opinion suggested.  (Tr. at 28 (emphasis added).)  In making this determination, the ALJ considered the other medical evidence in the record, which included extensive treatment notes from Stevens' physicians at Upstate Comprehensive Pain Clinic, including Drs. Donna-Ann Thomas, Kevin O'Keefe, Heather Tiller, Scott Van Valkenburg, P. Sebastian Thomas, and MBBS Umesh Metkar, (*id.* at 27, 367-72, 430-41, 453-72),

along with MRI scans and other clinical findings, (*id.* at 27, 341-45, 346, 351, 352, 353-58, 359, 378-80). Based on these records, the ALJ determined that Stevens was more limited than Dr. Ganesh's opinion suggested. (*Id.* at 27-29.) Accordingly, the ALJ relied on appropriate medical opinions, including that of Dr. Ganesh, in formulating Stevens' RFC.

Next, Stevens' argument that the ALJ did not adequately develop the record by failing to obtain a treating medical source opinion, (Dkt. No. 10 at 19-21), is also without merit. While the ALJ has an affirmative obligation to develop the administrative record, her duty to do so is not without limit. *See Guile v. Barnhart*, No. 5:07–cv–259, 2010 WL 2516586, at *3 (N.D.N.Y. June 14, 2010). Indeed, if all of the evidence received is consistent and sufficient to determine whether a claimant is disabled, further development of the record is unnecessary, and the ALJ may make her determination based upon that evidence. *See* 20 C.F.R. § 404.1520b(a). Consistent with that notion, where there are no "obvious gaps" in the record, the ALJ is not required to seek additional information. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). "Notably, the lack of a medical source statement from a treating physician, will not, by itself,

18

necessarily render the record incomplete." *Bell v. Colvin*, No. 5:12-cv-1527, 2013 WL 6283834, at *3 (N.D.N.Y. Dec. 4, 2013) (citing 20 C.F.R. § 404.1513(b)(6); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013)).

Here, the ALJ had before her Stevens' treatment records, objective medical evidence, including MRIs, and Dr. Ganesh's opinion. (*See generally* Tr. at 341-346, 351-359, 367-72, 378-80, 430-41, 453-72.) In her disability report, Stevens indicated that she received medical treatment from Oswego Health Center, Oswego Behavior Services, and University Hospital. (*Id.* at 295-98.) The ALJ obtained records from each of these providers, (*id.* 332-81, 421-522), and had Stevens attend psychiatric and internal medicine consultative examinations, (*id.* at 382-90). Thus, the court is satisfied that further development of the record was unnecessary because the ALJ had before her substantial evidence that enabled her to render a decision. *See Firpo v. Chater*, 100 F.3d 943 (Table), 1996 WL 49258, at *2 (2d Cir. Feb. 7, 1996); *Bell*, 2013 WL 6283834, at *3.

Finally, although the ALJ did not provide a function-by-function analysis of Stevens' physical capabilities, the ALJ's decision examined the relevant factors in reaching an RFC determination, (Tr. at 26-29), and the ultimate determination was supported by substantial evidence. Further, the

ALJ stated that her RFC assessment was based on careful consideration of the entire record, and she thoroughly reviewed the medical evidence in formulating her RFC. (*Id.*) In support of the ALJ's determination that Stevens can perform light work, the record shows that Stevens could ambulate without difficulty and did not have significant neurologic deficits, (*id.* at 437), and imaging showed that Stevens had a relatively normal lumbar spine with no degenerative disc disease, (*id.* at 431). Moreover, progress notes indicated that Stevens previously had steroid injections in her back, which helped, (*id.* at 440, 457), and that her pain was improving with medication, (*id.* at 438, 440). While the ALJ could have provided further clarification with respect to Stevens' capabilities, this shortcoming does not amount to legal error. (*Id.* at 26-29); *see Cichocki v. Astrue*, 729 F.3d 172, 177-78 (2d Cir. 2013); *Irizarry v. Astrue*, No. 5:09-cv-1370, 2012 WL 177969, at *2 (N.D.N.Y. Jan. 23, 2012).

Accordingly, the ALJ's RFC determination is supported by substantial evidence and free from legal error.

## C.   Credibility Assessment

Stevens next argues that the ALJ did not apply the appropriate legal standards in assessing her credibility. (Dkt. No. 10 at 21-24.) Specifically,

she contends that the ALJ improperly compared the consistency of Stevens' statements with the ALJ's own RFC finding and failed to consider Stevens' precipitating factors, medications, or other methods she uses to alleviate her symptoms.[10] (*Id.*)  The Commissioner argues, and the court agrees, that, in light of inconsistencies in the record that call into question Stevens' credibility, it was reasonable for the ALJ to find Stevens' subjective allegations not credible to the disabling extent claimed.  (Dkt. No. 11 at 14-16.)

Once the ALJ determines that the claimant suffers from a "medically determinable impairment[ ] that could reasonably be expected to produce the [symptoms] alleged," she "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (internal quotation marks and citations omitted).  In performing this analysis, the

---

[10] Stevens also argues, again, that the ALJ failed to develop the record by not requesting a retrospective opinion from a treating source physician to clarify why Stevens did not seek mental health treatment for the first seventeen months after finding her husband dead.  (Dkt. No. 10 at 23.)  Having already determined that the ALJ fulfilled her duty to develop the record, *see supra* Part VI.B.2, the court declines to address this issue again.

ALJ "must consider the entire case record and give specific reasons for the weight given to the [claimant's] statements." SSR 96-7p, 61 Fed. Reg. 34, 483, 34,485 (July 2, 1996). Specifically, in addition to the objective medical evidence, the ALJ must consider the following factors: "1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *F.S. v. Astrue*, No. 1:10-CV-444, 2012 WL 514944, at *19 (N.D.N.Y. Feb. 15, 2012) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ found that Stevens' statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible. (Tr. at 27, 29.) In making her determination, the ALJ relied on Stevens' treatment records, activities of daily living, testimony regarding her functional abilities, and the opinion of Dr. Inman-Dundon. (*Id.* at 27-29.) Although the ALJ did not undertake a step-by-step exposition of the factors articulated in 20 C.F.R. § 404.1529(c), "[f]ailure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently

22

specific to conclude that [s]he considered the entire evidentiary record."

*Judelsohn v. Astrue*, No. 11-CV-388S, 2012 WL 2401587, at *6 (W.D.N.Y.

June 25, 2012) (internal quotation marks and citation omitted); *see*

*Oliphant v. Astrue*, No. 11-CV-2431, 2012 WL 3541820, at *22 (E.D.N.Y.

Aug. 14, 2012) (stating that the 20 C.F.R. § 404.1529(c)(3) factors are

included as "'examples of alternative evidence that may be useful [to the

credibility inquiry], and not as a rigid, seven-step prerequisite to the ALJ's

finding'" (quoting *Snyder v. Barnhart*, 323 F. Supp. 2d 542, 546 (S.D.N.Y.

2004))).  Here, the ALJ explicitly acknowledged consideration of the 20

C.F.R. § 404.1529 factors, (Tr. at 26), and it is evident from her thorough

discussion that her credibility determination was legally sound.  *See Britt v.*

*Astrue*, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20

C.F.R. § 404.1529 and SSR 96-7p as evidence that the ALJ used the

proper legal standard in assessing the claimant's credibility).  Moreover, it

is evident from the ALJ's credibility analysis that her "reference to

consistency with the RFC determination was merely an indication that the

RFC determination incorporated those findings."  *Bell*, 2013 WL 6283834,

at *4; (Tr. at 27, 29).

Finally, as the Commissioner points out, inconsistencies in Stevens'

testimony call her credibility into question.  (Dkt. No. 11 at 15-16.)  For example, while her medical records showed that she did not have side effects from her medications, which she claimed were generally working, (Tr. at 423-24), at the hearing, she claimed that her medication caused concentration problems, (*id.* at 62).  Additionally, despite her complaints of back pain, her activities of daily living—upon which the ALJ heavily relied—suggest that she is capable of performing simple, routine, and repetitive tasks.  The record showed that Stevens was able to care for her personal and household needs, prepare holiday meals, iron, drive, shop, and care for her two dogs.  (*Id.* at 43-44, 63-64, 65-67, 303-06, 382, 385.)  Although, as the ALJ acknowledged, "the weight of the evidence concerning the claimant's daily activities does not control the outcome, it nevertheless provides respective and significant confirmation of [her] ability to perform work."  (*Id.* at 29.)  Thus, the ALJ's credibility assessment is supported by substantial evidence and free from legal error.

### D.    **Vocational Expert Testimony**

Lastly, Stevens argues that the VE testimony cannot provide substantial evidence to support the denial.  (Dkt. No. 10 at 24-25.)  Specifically, she alleges that the ALJ's errors in developing the record,

weighing of medical opinion evidence, and determining the RFC fatally undermine the step five determination. (*Id.*) As discussed above, however, the ALJ's development of the record, weighing of medical opinion evidence, and RFC determination were legally sound and are supported by substantial evidence. Further, the hypothetical question posed to the VE appropriately encompassed the restrictions contained in the ALJ's RFC analysis. (Tr. at 30-31.) As such, the ALJ's step five determination was free of legal error and is supported by substantial evidence. *See Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) (explaining that, if the ALJ's RFC assessment is supported by substantial evidence, it is appropriate for her to rely on that RFC assessment in questioning the VE).

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Stevens' complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 21, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court